AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court

**for the**
**Western District of New York**

**United States of America**

**v.**

**MOHAMED PATEL**

*Defendant*

**Case No. 24-mj-** 108

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

**COUNT I**
**(Conspiracy to Import Morphine)**

Beginning in or about January 2021, and continuing until in or about August 23, 2024, in the Western District of New York, and elsewhere, the defendant, **MOHAMED PATEL**, did knowingly, willfully, and unlawfully combine, conspire, and agree with others, known and unknown, to import into the customs territory of the United States, from any place outside thereof (but within the United States), Morphine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 952(a); all in violation of Title 21, United States Code, Section 846.

**COUNT II**
**(Conspiracy to Possess with Intent to Distribute Morphine)**

Beginning in or about January 2021, and continuing until in or about August 23, 2024, in the Western District of New York, and elsewhere, the defendant, **MOHAMED PATEL**, did knowingly, willfully, and unlawfully combine, conspire, and agree with others, known and unknown, to possess with the intent to distribute morphine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(l) and 841(b)(1)(C); all in violation of Title 21, United States Code, Section 846.

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

MATTHEW F MASTRORILLI
Digitally signed by MATTHEW F MASTRORILLI
Date: 2024.09.12 16:00:00 -04'00'

*Complainant's signature*

MATTHEW MASTRORILLI
Special Agent
Homeland Security Investigations

*Printed name and title*

Sworn to telephonically.

Date: September 12, 2024

H. Kenneth Schroeder, Jr.

*Judge's signature*

City and State: Buffalo, New York

HONORABLE H. KENNETH SCHROEDER
UNITED STATES MAGISTRATE JUDGE

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

STATE OF NEW YORK )
COUNTY OF ERIE ) SS:
CITY OF BUFFALO )

Matthew Mastrorilli, being duly sworn, deposes and states:

1. I have been a sworn Federal Law Enforcement Officer since June 2008. I am currently employed as a Special Agent ("SA") with the U.S. Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), Buffalo, New York. I have been employed by HSI since August 2022. I am currently assigned to the HSI Buffalo Border Enforcement and Security Task Force ("BEST"), an HSI sponsored law enforcement task force comprised of local, state, federal and Canadian law enforcement officers co-located in Buffalo, New York and tasked with combatting transnational criminal organizations ("TCOs") exploiting vulnerabilities of the shared international border. As such, I am a law enforcement officer of the United States, within the meaning of Title 18, United States Code, Section 115(c)(1), who is "authorized by law or by Government agency to engage in or supervise the prevention, detention, investigation or prosecution of any violation of Federal criminal law."

2. As a Special Agent I attended the Federal Law Enforcement Training Center ("FLETC") completing the Criminal Investigator Training Program ("CITP") and HSI Special Agent Training ("HSI SAT"). During this training, I received detailed training, both academic and practical application, in the areas of informant handling/debriefing, drug

packaging, pricing, importation, and trafficking methods. In addition, I received both academic and practical application training in surveillance and counter surveillance techniques/methods. I received legal instruction in Federal drug conspiracy laws, preparing drug affidavits, the Controlled Substances Act, Fourth Amendment Searches and Seizures, Federal Rules of Evidence, and the execution of search warrants. Prior to being a Special Agent, I was employed by the United States Custom and Border Protection (CBP), port of Buffalo, NY. I completed their basic law enforcement academy at the Federal Law Enforcement Training Center (FLETC), Glynco, GA, focusing on Title 8 and 19. I served as a Federal Officer in Buffalo, NY from June 2008 through July of 2009. In 2009, I accepted a position with the United States Border Patrol (USBP). I completed their basic Law Enforcement Training Program at FLETC Artesia, New Mexico and was assigned to the Southern Border of Mexico and The United States, in Del Rio, TX. There, I served as a Patrol Agent, focusing on disrupting and dismantling Transnational Criminal Organizations (TCOs) by conducting line watch, roving patrols, and interdiction assignments. In 2010 accepted a transfer to the Northern Border of Canada and The United States, in Buffalo, NY, where I was part of the training Unit specializing in defensive tactics, Firearms and Intermediate force from 2010 to 2017. In 2017, I successfully passed and was selected to become part of the Border Patrol's tactical unit within the Border Patrol's Special Operations Group (BORTAC), this Unit specializes in close quarter combat, entry tactics, special weapon/tactics and high-risk warrant services. While part of the Special Operations Group (BORTAC), I surveilled, investigated, and arrested high risk targets to include, members of Transnational Criminal Organizations ("TCO"), human smugglers and Child exploitation suspects amongst other high-risk targets. During this time, I have interviewed defendants, witnesses, and informants

relative to the illegal possession and trafficking of controlled substances. Through my training and experience, I have gained a working knowledge and insight into the normal operational habits of narcotics smugglers, with particular emphasis on those who attempt to import and traffic narcotics into and throughout the United States. My investigative experience detailed herein, as well as the experience of other law enforcement agents who are participating in this investigation, and information provided to me by cooperating sources, serve as the basis for the opinions and conclusions set forth herein.

3. During my law enforcement career, I have participated in numerous cases involving the distribution of narcotics. I have participated in successful investigations into illicit drug distribution networks. I am familiar with how controlled substances are obtained, diluted, packaged, distributed, sold and used within the framework of drug trafficking and how drug traffickers use their persons and personal property to facilitate their illegal activities.

4. Your affiant is submitting this affidavit in support of a criminal complaint charging **MOHAMED PATEL** with Conspiracy to Import Morphine, in violation of Title 21, United States Code, Sections 952, and 846; and Conspiracy to Possess with Intent to Distribute Morphine, in violation of Title 21, United States Code, Sections 841(a)(1) 841(b)(1)(C), and 846.

5. I am familiar with all aspects of this investigation as a result of my participation in this investigation, as well as conversations with other law enforcement officers, and review of documents and records obtained by HSI Agents and United states CBP Officers. Since this

affidavit is being submitted for the limited purpose of obtaining a criminal complaint, I have not included every fact known to me concerning this investigation. I have set forth only the facts I believe are necessary to establish the required foundation for the requested complaint.

## PROBABLE CAUSE

6. Homeland Security Investigations (HSI) has been conducting this investigation relating to **PATEL's** transnational drug trafficking activity. The investigation has revealed that since January 2021, **PATEL**, working together with others, have moved bulk quantities of morphine into the Western District of New York, then subsequently shipping the controlled substances to Canada. It is believed **PATEL** uses a network of truck drivers to ship controlled substances out of the Western District of New York, and into Canada. One such driver is BASHIR KASOZI, who is currently charged in a two-count complaint (24-MJ-5168). **PATEL** is believed to be supplied by multiple sources of supply from outside the United States, by way of India. The investigation reveals that **PATEL** has received bulk quantities of morphine, primarily through the John F. Kennedy airport in New York City, which are subsequently shipped to the western District of New York.

7. In August 2024, HSI started monitoring communications between **PATEL** and a Confidential Source (CS). Text messages and calls between the two revealed **PATEL** directed packages, ordered from India to Hamburg, NY via FedEx. On August 22, 2024, a total of 62 packages were delivered to multiple addresses arranged by the CS. **PATEL** messaged and called the CS to confirm delivery and receipt of said packages and to set up a meet with a tractor trailer driver. **PATEL** then provided multiple options to the CS to transfer

the packages to the driver. In one message, **PATEL** stated, "If you can't make it let me know I can arrange a guy to come there." **PATEL** coordinated with the CS and driver to set up a time and place to meet, predicated upon the driver's schedule.

8. On August 23, 2024, at approximately 5:30 p.m., HSI conducted surveillance on the CS and identified KASOZI as a truck driver working for **PATEL**. **PATEL** directed the CS and KASOZI to meet and exchange the 62 packages ordered by **PATEL**. The packages contained morphine, which is a DEA Schedule II Controlled Substance. HSI has documented text messages and calls from **PATEL**, indicating the location, time, and quantity of boxes of morphine to be delivered. **PATEL** also coordinated the times when KASOZI met up with the CS to accept packages on behalf of **PATEL**. Moreover, **PATEL** tracked all shipments being delivered to the multiple addresses in the Western District of New York, and confirmed with the CS through text messages by sending the FedEx tracking numbers to the CS.

9. At approximately 5:40 p.m. at **PATEL's** direction, the CS arrived at 2345 Walden Ave, Buffalo, NY 14225, for a drug exchange. This location has previously been used on multiple occasions for that purpose. The investigation revealed **PATEL,** through text messages and calls, directed the CS and KASOZI to meet there to exchange packages morphine. At approximately 6:00 p.m., surveillance observed KASOZI arrived at the above location and pulled behind the CS's vehicle, and they both began to unload the 62 packages from the CS's vehicle and placing them on a pallet in the trailer of the TransAm Tractor Trailer, Cab #2657PZ and Trailer #R9885C, operated by KASOZI. After all 62 packages had been placed in the tractor trailer, KASOZI moved the pallet to the nose (front) of the trailer.

At approximately 6:17 p.m., the CS contacted **PATEL** via text message and stated, "all set," to which **PATEL** responded, "Thank you bro" and "did he leave?" This transaction was documented with video, audio and physical surveillance. HSI agents and Task Force Officers (TFO's) then followed KASOZI to a CBP outbound inspection at the Lewiston Bridge Port of Entry (POE).

10. At approximately 7:30 p.m., while working Contraband Enforcement Team (CET) outbound Operations at the Lewiston Bridge Port of Entry (POE) in Lewiston, New York, CET Custom and Border Protection Officers (CBPO's) encountered the commercial truck and trailer operated by KASOZI. The truck was manifested to contain 5 pallets of paper products picked up from ProAmpac Westfield Main Plant, 132 N. Elm Street Westfield, MA 01085. The shipment was destined to Mother Parker's Tea & Co, 144 Mills Road Ajax, Ontario L1S 2H1. During inspection of the trailer, an un-manifested pallet of 62 brown taped packages were discovered in the nose of the trailer. A search of one of the boxes resulted in the discovery of a smaller gold box that contained a glass vial. Inside the vial, brown circular objects were found. The substance was field tested utilizing NIK Opiates Reagent System K. The substance field tested positive for morphine, a DEA Schedule II Controlled Substance. At approximately 8:30 p.m., KASOZI was arrested and charged with Importation of Morphine and Possession with Intent to Distribute Morphine.

11. At approximately 8:59 p.m., **PATEL** texted the CS and asked the CS to call him urgently. Before the CS could complete the call, **PATEL** called the CS to have a conversation about the truck operated by KASOZI. HSI investigators memorialized the

conversation as well various other text messages. **PATEL** advised the CS the tractor trailer was stopped, and **PATEL** indicated he knew because he had a vehicle following it. **PATEL** told the CS to delete everything in their text message chat. The CS responded via text message with "deleted fuck man." At approximately 10:00 p.m., **PATEL** contacted the CS again saying, "you don't have to stress, they don't know anything, we don't know what my driver, my guy is saying." The CS asked if **PATEL** had any other boxes scheduled for delivery and **PATEL** responded, "no everything has been delivered," and "now we must start over and find another driver." **PATEL** then stated, "we have to start at zero again," and that he must "line another guy to bring it over." **PATEL** directed the CS to not say anything and if anyone asks, say "I don't know what you are talking about." **PATEL** also mentioned to the CS "the driver doesn't have your name or number." **PATEL** ended the conversation telling the CS he will order more boxes and get another driver.

12. On or about August 30, 2024, **PATEL** contacted the CS via text messages and recorded phone calls. **PATEL** informed the CS that 26 or 28 more packages are coming and asked the CS to provide him another address for delivery of these packages. **PATEL** stated that one of the previous addresses has been flagged. It is believed that **PATEL** may have someone working in FedEx who provided this information to him. **PATEL** directed the CS to secure the packages and told the CS **PATEL** would come and take them on the U.S. side of the border and "do things through the U.S. side only." **PATEL** then stated to the CS, "we don't have to be bothered with the border shit," and "let's give this a week or two and finish this last transaction, I have to keep a low profile." He further stated, "if I can get rid of it on

the U.S. side and U.S. only, I will come see you." At the end of that conversation, **PATEL** directed the CS to not mention anything about the packages and to delete the conversation.

13. On September 3, 2024, **PATEL** contacted the CS on a new phone number through WhatsApp, an end-to-end encrypted messaging application. The number PATEL used to contact the CS is registered as a South African number (+27 72-477-1837). It has recently been discovered that **PATEL** frequently travels to South Africa, with much of his travel abroad being a month or longer in duration. **PATEL** text messaged the CS from the WhatsApp number saying, "Hi brother it's Moe, msg me on this number, delete our convo from old stuff."

14. On September 5, 2024, **PATEL** messaged the CS via WhatsApp and told the CS that 12 more packages will be arriving at the addresses provided by the CS. **PATEL** then provided the CS with the tracking numbers of the packages. **PATEL** then stated to the CS, "Once you get that delivered have it somewhere safe stored."

15. On September 6, 2024, **PATEL** contacted the CS through multiple calls and text messages, all of which were memorialized. **PATEL** mentioned a news article that was written about KASOZI's arrest. **PATEL** then stated, "this happened to me too, when I was driving a truck, I have no fricken clue where it came from, when I stopped the truck, someone put it in, I have no clue, that should be your answer till they fucking let you go, and that's how you win the case anyways, because they can't trace back where the fuck it came from." **PATEL** then asked the CS if there were any labels on the packages given to KASOZI. When

the CS responded "no," **PATEL** said "perfect." **PATEL** then told the CS that the packages contained morphine. During the conversation, **PATEL** stated that he is "the guy." In my training and experience, I believe this to mean that **PATEL** is expressing that he is the person orchestrating everything in this conspiracy, and that he is in charge. Later in the conversation, **PATEL** also stated that due to the 62 packages seized on August 23, 2024, he lost "$100,000 profit that I lost." **PATEL** further stated during the conversation that he has been working with KASOZI for 3 years, and during the course of that period he has paid KASOZI approximately $500,000 for his services. **PATEL** ended the conversation with a plan to meet up with the CS on September 11, 2024.

16. On September 11, 2024, HSI Canadian TFOs conducted surveillance on **PATEL** in Canada. TFOs observed **PATEL** travel from his residence to the United States Lewiston Bridge Port of Entry (POE). **PATEL** was travelling with another passenger. PATEL and the other passenger made one stop in Canada prior to crossing the border and met an unidentified male. The unidentified male handed **PATEL** an envelope. Later in a custodial interview, the other passenger told HSI agents that the envelope contained $7,200 U.S. currency. The other passenger also stated that PATEL directed him to declare half the funds when crossing the border. CBP agents took a declaration at the POE from **PATEL** and the other passenger where each claimed to have $3,000 U.S. currency and that they were going to the casino.

17. During the interview, the other passenger stated that on August 23, 2024, **PATEL** directed the passenger to surveil the tractor trailer that was driven by KASOZI cross the border into Canada and report anything back to **PATEL**. The passenger stated he called

**PATEL** on August 23, 2024, and told **PATEL** the tractor trailer was stopped and detained at the Lewiston POE. Through my training, experience and consultation with other law enforcement officers, I believe the passenger was a "spotter" paid by **PATEL** to keep watch of the morphine load. Furthermore, I believe that **PATEL**'s $3,000 payment to the passenger was remuneration for the passenger's role on August 23, 2024.

## CONCLUSION

18. Based on the facts and circumstances set forth in this affidavit, I submit that probable cause exists to believe that Mohamed **PATEL** violated Title 21, United States Code, Section 952(a) (importation of Controlled Substances), Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) (Possession with Intent to Distribute Controlled Substances) and 846 (Conspiracy to commit a controlled substance offense).

MATTHEW F MASTRORILLI
Digitally signed by MATTHEW F MASTRORILLI
Date: 2024.09.12 16:00:57 -04'00'
____________________________
Matthew Mastrorilli
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
this 12th day of September 2024

H. Kenneth Schroeder, Jr.
________________________________________
HONORABLE H. KENNETH SCHROEDER, JR.
UNITED STATES MAGISTRATE JUDGE