IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
OCT - 9 2025
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNITED STATES OF AMERICA,

v. 25-CR-173

MOHAMED PATEL,

Defendant.

## PLEA AGREEMENT

The defendant, **MOHAMED PATEL**, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

## I. THE PLEA AND POSSIBLE SENTENCE

1. The defendant agrees to waive indictment and plead guilty to a one-count Information which charges a violation of Title 21, United States Code, Section 846 (conspiracy to possess with intent to distribute morphine) for which the maximum possible sentence is a term of imprisonment of 20 years, a fine of $1,000,000, a mandatory $100 special assessment, and a term of supervised release of at least 3 years and up to life. The defendant understands that the penalties set forth in this paragraph are the minimum and maximum penalties that can be imposed by the Court at sentencing.

2. The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to

serve in prison all or part of the term of supervised release, up to 2 years, without credit for time previously served on supervised release. As a consequence, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II. ELEMENTS AND FACTUAL BASIS

3. The defendant understands the nature of the offenses set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

a. an agreement existed between two or more persons to commit a controlled substance felony offense;

b. the defendant knew of the existence of the agreement; and

c. the defendant intended to participate in the unlawful agreement.

## FACTUAL BASIS

4. The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

a. Beginning in or about October 2019, the exact date being unknown, and continuing until on or about September 11, 2024, in the Western District of New York and elsewhere, the defendant, MOHAMED PATEL, did knowingly and willfully combine, conspire, and agree with Bashir Kasozi, and others, known and unknown, to possess with intent to distribute morphine, a Schedule II controlled substance.

b. Specifically, during this time period, the defendant arranged for bulk quantities of tablets containing morphine to be imported into the United States from India and paid multiple individuals in the Western District of New York to receive the controlled substances and store them at their residences. Subsequently, the defendant employed a truck driver, that is, Bashir Kasozi ("Kasozi"), to retrieve the tablets containing morphine from the individuals to

whom they had been sent and deliver them via tractor trailer across the border to the defendant in Ontario, Canada.

c. On August 22, 2024, a total of 62 packages of morphine tablets were delivered from India to the Western District of New York. On August 23, 2024, Kasozi, acting at the direction of the defendant, entered the United States to collect these packages. That evening, Kasozi arrived at the Lewiston Bridge Port of Entry ("POE") with a tractor trailer containing the 62 packages of morphine tablets. The packages were placed in the trailer in a way to conceal their existence. The transport of the packages of morphine tablets, in terms of the date, time, manner of shipment, and port of entry, had been arranged by the defendant. Kasozi's tractor trailer was encountered at the Lewiston Bridge POE at approximately 7:00 p.m. It was manifested to contain five skids of paper products picked up from a company in Westfield, MA and destined for Mother Parker's Tea & Co in Ajax, Ontario.

d. During the outbound inspection, Kasozi told Customs and Border Protection ("CBP") that he had been in the United States for three days, and that he was coming from Massachusetts with a load of paper. The CBP Officer asked Kasozi if he had anything to declare, to include prescription or nonprescription narcotics, currency over $10,000, or weapons of any kind. Kasozi responded that he did not. The CBP Officer then referred Kasozi and his truck and trailer for secondary inspection. During secondary inspection, a scan of the trailer showed an anomaly in the front of the trailer. Upon further inspection, an un-manifested skid of 62 brown taped packages was discovered. A search of one of the boxes revealed a smaller gold box that contained a glass vial, inside of which were brown circular objects that field tested for morphine, a Schedule II controlled substance. The tablets in the packages were subsequently submitted to a forensic laboratory for further examination, which confirmed the presence of morphine with a net weight of approximately 74.4 kilograms. Kasozi was arrested.

e. The defendant knew that the 62 packages had been apprehended by CBP and that Kasozi had been arrested because the defendant had enlisted another individual to surveille Kasozi and report back to the defendant.

f. The defendant admits that he directed Kasozi to pick up the shipment of 62 brown taped packages containing morphine tablets

from Buffalo, New York, and deliver the packages to him in Ontario, Canada.

g. On or about August 30, 2024, the defendant arranged for an additional 26 to 28 packages containing morphine to be received in the Western District of New York. The defendant also arranged to personally cross into the United States to collect the packages. On September 11, 2024, the defendant traveled from Canada to the United States, arriving at the Lewiston Bridge POE. The individual who had surveilled Kasozi on August 23, 2024 was a passenger in defendant's vehicle. Prior to leaving Canada, the defendant picked up an envelope which was later determined to contain $7,200 in U.S. currency. At the Lewiston Bridge POE, the defendant and the passenger each declared $3,000 in U.S. currency and claimed they were going to the casino. The defendant did not retrieve the packages containing morphine as scheduled and was taken into custody upon attempting to return to Canada.

h. The defendant admits that between October 2019 and September 22, 2024, he imported multiple shipments of morphine tablets into the United States from locations in India, and that a number of those shipments were interdicted by law enforcement at the John F. Kennedy airport in New York City, FedEx, the Canadian border, and from various individuals in the Western District of New York.

i. Laboratory analysis of the seized tablets, including the seizure at the Lewiston Bridge POE on August 23, 2024, and the seizure of the narcotics the defendant had traveled to the United States to collect on September 11, 2024, confirmed the presence of morphine for a total net weight of 127.02 kilograms.

j. The defendant admits that, based on the Drug Conversion Tables in the U.S. Sentencing Guidelines, when converting the controlled substance he possessed to Converted Drug Weight, the Converted Drug Weight involved in his relevant conduct encompassed in the Information is the equivalent of at least 30,000 kilograms but less than 90,000 kilograms. The defendant admits that this is the amount the government could readily prove against him.

## III. <u>SENTENCING GUIDELINES</u>

5. The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

## BASE OFFENSE LEVEL

6. The government and the defendant agree that Guidelines §§ 2D1.1(a)(5) and 2D1.1(c)(2) apply to the offenses of conviction and provide for a base offense level of **36**.

## ACCEPTANCE OF RESPONSIBILITY

7. At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level downward adjustment of Guidelines § 3E1.1(a) (acceptance of responsibility), and further agrees to move the Court to apply the additional one (1) level downward departure adjustment of Guidelines § 3E1.1(b), which would result in a total offense level of **33**.

## CRIMINAL HISTORY CATEGORY

8. It is the understanding of the government and the defendant that the defendant's criminal history category is **I**. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the plea of guilty based on the Court's determination of the defendant's criminal history category.

## ADJUSTMENT FOR ZERO-POINT OFFENDER

9. It is the understanding of the government and the defendant that the defendant meets the criteria set forth in Guidelines Section 4C1.1(a)(1)-(11) (Adjustment for certain Zero-

Point Offenders), and as a result, a two-level downward adjustment applies, and the adjusted offense level is 31.

## GUIDELINES APPLICATION, CALCULATIONS AND IMPACT

10. It is the understanding of the government and the defendant that, with a total offense level of **31** and criminal history category of **I**, the defendant's sentencing range would be a term of imprisonment of **108 to 135** months, a fine of **$30,000** to **$1,000,000**, and a period of supervised release of **3** years. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in ¶ 1 of this agreement.

11. The government and the defendant agree to the correctness of the calculation of the Sentencing Guidelines range set forth above. The government and the defendant, however, reserve the right to recommend a sentence outside the Sentencing Guidelines range. This paragraph reserves the right to the government and the defendant to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action.

12. The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

13. In the event the Court contemplates any Guidelines adjustments, departures, or calculations different from those agreed to by the parties above, the parties reserve the right to answer any inquiries by the Court concerning the same.

## IV. STATUTE OF LIMITATIONS

14. In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any federal criminal offense which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction become final.

## V. IMMIGRATION CONSEQUENCES

15. The defendant acknowledges that the defendant is not a citizen of the United States. The defendant understands that if the defendant is not a citizen of the United States, the defendant's guilty plea and conviction make it very likely that the defendant's removal from the United States is presumptively mandatory, and that, at a minimum, the defendant is at risk of being removed or suffering other adverse immigration consequences. The defendant is on notice that the defendant's ability to enter, remain, and/or reside in the United States is subject to the laws, regulations, and associated policies of the Department of Homeland Security. The defendant understands that any effect that the defendant's conviction in this action will have upon the defendant's immigration status, that is, possible removal, denaturalization, or other immigration consequence, is the subject of a separate proceeding. The defendant has had an opportunity to fully determine what the consequences of the defendant's conviction may be on the defendant's immigration status, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's

conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that the guilty plea may entail, even if the consequence is the defendant's automatic removal from the United States.

16. The defendant understands that the defendant is bound by the guilty plea regardless of the immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to the guilty plea and to the sentence based on those consequences and agrees not to seek to withdraw the guilty plea or to file a direct appeal or any kind of collateral attack challenging the guilty plea, conviction, or sentence based on the immigration consequences of the guilty plea, conviction, or sentence. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in the appropriate forum.

17. If the defendant is eligible and applies to transfer the defendant's sentence pursuant to the international prisoner transfer program, the Office of the United States Attorney for the Western District of New York agrees not to take a position in the defendant's transfer application. Defendant acknowledges and understands, however, that the transfer decision rests in the sole discretion of the Office of Enforcement Operations ("OEO") of the Criminal Division of the United States Department of Justice and that the position of the Office of the United States Attorney for the Western District of New York is neither binding nor determinative of the positions of other federal agencies or on the final transfer decision of OEO. Defendant further understands that in addition to OEO, federal law and the underlying transfer treaties require that the foreign government must also approve the transfer.

## VI. GOVERNMENT RIGHTS AND RESERVATIONS

18. The defendant understands that the government has reserved the right to:

a. provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b. respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c. advocate for a specific sentence consistent with the terms of this agreement including the amount of a fine and the method of payment;

d. modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor; and

e. oppose any application for a downward departure and/or sentence outside the Guidelines range made by the defendant.

19. At sentencing, the government will move to dismiss the criminal complaint as against the defendant, pending under Magistrate's No. 24-MJ-108.

20. The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

## VII. APPEAL RIGHTS

21. The defendant knowingly waives the right to appeal and collaterally attack the defendant's conviction in any proceeding, including, but not limited to, an application under

Title 28, United States Code, Section 2255, and/or Section 2241. In addition to any other claims the defendant might raise, the defendant knowingly waives the right to challenge the conviction based on: (1) any non-jurisdictional defects in the proceedings prior to entry of this plea; (2) a claim that the statute to which the defendant is pleading guilty is unconstitutional (except in the event that, in the future, the Supreme Court finds the statute in question unconstitutional); and (3) a claim that the conduct admitted in the Factual Basis of this plea agreement does not fall within the scope of the statutes to which the defendant is pleading guilty.

22. The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack, in any proceeding, including but not limited to, an application under Title 28, United States Code, Section 2255 and/or Section 2241, any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment of a term of imprisonment of **108 to 135** months, a fine of **$30,000** to **$1,000,000**, and a period of supervised release of **3** years, notwithstanding the manner in which the Court determines the sentence. The defendant further knowingly waives the right to appeal and/or collaterally attack any condition of supervised release imposed by the Court for which the defendant had notice, including from a recommendation by the Probation Office in the Presentence Investigation Report, and did not object. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

23. The defendant understands that by agreeing not to collaterally attack the conviction or sentence in any proceeding, including, but not limited to, an application under Title 28, United States Code, Section 2255 and/or Section 2241, the defendant is waiving the right to challenge the conviction or sentence in the event that, in the future, the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

24. The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment of **108 to 135** months, a fine of **$30,000** to **$1,000,000**, and a period of supervised release of **3** years, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

25. By entering this plea of guilty, the defendant waives any and all right to withdraw the defendant's plea or to attack the defendant's conviction or sentence, either on direct appeal or collaterally, on the ground that the government has failed to produce any discovery material (other than material the government was required to produce under *Brady v. Maryland* and its progeny), that has not already been produced as of the date of the signing of this Agreement.

26. Notwithstanding the foregoing, nothing in the Appeal Rights section of this plea agreement shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise.

## VIII. FORFEITURE PROVISIONS

### ADMINISTRATIVE FORFEITURE

27. The defendant acknowledges that the U.S. Department of Homeland Security has completed administrative forfeiture with regard to the assets listed below. The defendant agrees not to contest the completed administrative forfeiture of the below assets and agrees to waive the defendant's right, title, and interest to any and all of the assets that were administratively forfeited. Those assets include the following seized by law enforcement on or about September 11, 2024:

a. The sum of five thousand eight hundred and eighty-five dollars ($5,885) in Canadian Currency; and

b. The sum of one thousand four hundred and eighty dollars ($1,480) in United States Currency.

28. The defendant agrees to unconditionally release and hold harmless the government and U.S. Department of Homeland Security, its officers, employees, and agents, from any and all claims, demands, damages, causes of action, or suits, of whatever kind, that might now exist or hereafter exist relating to the seizure, restraint, and/or forfeiture of the currency.

29. The defendant agrees that in the event this plea agreement is voided for any reason, the agreement for forfeiture, abandonment, and disposition of the currency survives and shall be given full force and effect. The failure of the defendant to forfeit any property as

required under this agreement, including the failure of the defendant to execute any document to accomplish the same on timely notice to do so, may constitute a material breach of this agreement.

30. The defendant agrees that if, for any reason, in any pleadings before the Court, or any order of the Court, including but not limited to the Preliminary and/or Final Order of Forfeiture and the Judgment and Commitment, the government fails to properly identify an item to be forfeited, fails to include any item that is forfeitable under the applicable forfeiture statute in this case, or includes a clerical or technical error, the defendant will consent and not oppose any effort by the government to amend, correct, or add to the description/list of items subject to forfeiture in this case. Additionally, to the extent necessary, and at the discretion of the United States Attorney's Office, the defendant further agrees in the alternative, to the abandonment or civil forfeiture of any items that were excluded from the original description of items to be forfeited. Finally, if not specially identified or listed above, the defendant agrees to the abandonment of any and all cellular phones seized by law enforcement in this case.

## X. TOTAL AGREEMENT AND AFFIRMATIONS

31. This plea agreement represents the total agreement between the defendant, MOHAMED PATEL, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

MICHAEL DIGIACOMO
United States Attorney
Western District of New York

BY: ______________________________
P. RICHARD ANTOINE
Assistant United States Attorney

Dated: October 9, 2025

I have read this agreement, which consists of pages 1 through 14. I have had a full opportunity to discuss this agreement with my attorney, Rodney O. Personius, Esq. I agree that it represents the total agreement reached between me and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I sign this agreement voluntarily and of my own free will.

______________________________
MOHAMED PATEL
Defendant

Dated: October 9, 2025

______________________________
RODNEY O. PERSONIUS
Attorney for the Defendant

Dated: October 9, 2025