UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v. Case No. 25-cr-173

MOHAMED PATEL,

Defendant.

# DEFENSE RESPONSE TO NINE ARTICLES ON KAMINI PILLS APPENDED TO AND DISCUSSED IN GOVERNMENT'S SENTENCING MEMORANDUM (DOC. 45)

Dated: Buffalo, New York
June 23, 2026

*/s/Rodney O. Personius*
Rodney O. Personius, Esq.
PERSONIUS MELBER LLP
*Attorneys for Defendant*
MOHAMED PATEL
2100 Main Place Tower
350 Main Street
Buffalo, NY 14202
(716) 855-1050
rop@personiusmelber.com

# INTRODUCTION

At an appearance before the Court on May 26, 2026, the protocol for submitting a set of Kamini pills seized during the investigation leading to the prosecution of the defendant, Mohamed Patel, for testing by a private lab was discussed. Before moving forward, Government counsel at this appearance first requested an opportunity to file a written submission to ostensibly demonstrate the proposed pill testing protocol is not needed.

A submission has since been filed by the prosecution on June 16, 2026 (Doc. 45) which, in part, addresses this issue. In particular, annexed to the submission are nine articles, all of which report on Kamini misuse in Australia and New Zealand. Five of the nine articles consist of anecdotal reports of opiate dependency among a total of 34 users of Kamini between 2013 and 2022. The dependency is attributed to both a past use of raw opium and an excessive use of Kamini pills, manyfold times greater than the prescribed dosage. As a whole, all of the articles lack any confirmed basis in scientific research aside from the undisputed fact that, if misused, the presence to whatever degree of opium in Kamini pills can lead to dependency.

In all, the source material relied upon by the prosecution fails to provide any reason for not moving forward on an expedited basis in submitting a sample of the seized Kamini pills associated with this prosecution for testing by NMS Labs, a private laboratory that has been identified in the Commonwealth of Pennsylvania. We urge the Court to direct the parties to proceed with that testing protocol without further delay.[1]

[1] The remainder of the government's submission, starting at page 7 and continuing through page 21, addresses other sentencing-related issues. We do wish to respond to these additional arguments being advanced by the prosecution as there are a number of contextual considerations that bear upon the points that are raised. We respectfully request that the timing of our reply to these additional arguments be held in abeyance pending completion of the Kamini pill testing protocol.

## I. THE SOURCE MATERIAL ANNEXED AS EXHIBIT A TO THE GOVERNMENT'S SENTENCING MEMORANDUM

The nine articles concerning Kamini pills relied upon by the prosecution are all included seriation as part of **Exhibit A** to its submission. They have been filed as Doc. 45-1, and consist of a total of 35 pages. For ease of reference, these articles are first separately identified below:

> **Article 1** (Doc. 45-1, pages 2-4): Multani Kaminividravanna Rasa (Kamini) tablets, Australian Government, Department of Health Disability and Aging, Therapeutic Goods Administration (06/08/23).
>
> **Article 2** (Doc 45-1, pages 5-8): Kamini, Healthify (2024). [As described in **Exhibit A**, appended hereto, this organization provides information and education to citizens of New Zealand regarding health-related issues. The writers reportedly draw on evidence-based research, New Zealand Clinical Guidelines, and "consumer and cultural expertise."]
>
> **Article 3** (Doc. 45-1, pages 9-13): "Indian Viagra" – herbal drug Kamini contains morphine and can quickly lead to dependence, The Conversation (10/03/22). [Annexed as **Exhibit B** is an excerpt from the website for The Conversation, explaining that it is an Australian not-for-profit organization formed in 2011 that reports on what is described as research-based news and analysis.]
>
> **Article 4** (Doc 45-1, pages 14-15): Case series on treatment of dependence to Kamini Vidrawan Ras with opioid substitution therapy, Drug Alcohol Review Abstract (06/16/22). [Annexed as **Exhibit C** is an excerpt from the_website for the Australasian Professional Society on Alcohol & Other Drugs (APSAD), which publishes the Drug and Alcohol Review. The APSAD was formed in 1981 and consists of over 400 members from 9 different countries, including principally Australia and New Zealand, as well as the United States. The APSAD's purpose is to enhance public understanding and management of substance use and its impact. Annexed as **Exhibit D** is a summary of the credentials of one of the authors of the article that is the subject of the Abstract, Dr. Thileepan Naren, who describes himself as an Addiction Medicine Specialist. He earned a Bachelor of Medicine and Surgery degree from Monash University on November 30, 2006, and later earned Masters degrees in Public Health and Health Management. He is also the author of the letter that is relied upon by the Government as both Article 7 and Article 8, and is quoted in Article 9.]

**Article 5** (Doc 45-1, pages 16-17): Kamini, a little recognized source of illicit opioid: A case series of 12 patients, Drug and Alcohol Review Abstract (09/2022).

**Article 6** (Doc 45-1, pages 18-25): Case study: ten men addicted to Ayurvedic medicines (Kamini and Barshasha) presenting for opioid substitution treatment, Best Practice Advocacy Centre New Zealand (bpac-nz) (09/2020). [Annexed as **Exhibit E** is an excerpt from the bpac-nz website reporting that this organization was created in New Zealand in 2009 as a not-for-profit. Its stated purpose is to deliver educational and continuing professional development programs to medical practitioners and other health professional groups throughout New Zealand. Above the title, the article warns "This item is 5 years and 9 months old; some content may no longer be current."]

**Article 7** (Doc 45-1, page 26): Kamini: an underappreciated cause of opioid dependence, Letter to the Editor by Dr. Thileepan Naren, AMPCo Pty Ltd. (2023). [Annexed as **Exhibit F** is a one-page excerpt from the website for AMPCo, describing this organization as having been established in 1913 as a wholly owned subsidiary of the Australian Medical Association. The acronym stands for Australasian Medical Publishing Company.]

**Article 8** (Doc 45-1, pages 27-29): Kamini: an underappreciated cause of opioid dependence, Letter by Dr. Thileepan Naren to the Med J Aust (04/03/2023). [As described in **Exhibit G**, the Medical Journal of Australia has been in existence since 1914, and offers to its readers research and commentary.][2]

**Article 9** (Doc 45-1, pages 30-25): Herbal product Kamini may be causing opioid dependence in Australia, doctors warn, The Guardian (09/26/22). [A website excerpt providing background information on the Guardian Media Group is annexed as **Exhibit H**. This global media organization has been in existence since 1821.]

## II. SUMMARY OF ARTICLES' CONTENT

As set forth below, the substantive content of these nine provided articles may be broken down into eight different topic areas. As will be seen, statements contained in the articles are

[2] Articles 7 and 8 are the identical letter written by Dr. Naren.

ofttimes repetitive. Each article, as noted, originates from either Australia or New Zealand. The time frame for the provided information is between 2013 and 2024.

Most reported information is anecdotal, and none is based upon genuine scientific or empirical research. Reliance upon anecdotal evidence is recognized as a logical fallacy known as an "anecdotal fallacy":

> The anecdotal fallacy, also called the "person who" fallacy (statements like "I know a person who…"), is an informal fallacy in which individuals base general conclusions on limited, informally collected examples rather than systematic evidence. While anecdotal reasoning has likely existed throughout human history, formalization of the fallacy emerged in modern logic and rhetoric scholarship. The error occurs when a recent memory, striking anecdote, or unusual news story leads one to overestimate the probability of such events, especially when better statistical evidence is available. Anecdotal evidence is frequently involved in the post hoc fallacy.

Gabriel K. Rieshok, Senior Director, Public Sector Technology, RTI International, Washington, D.C.

Fairly considered in its totality, the reported information in the nine supplied articles is of limited relevance to this prosecution and does not mitigate against pursuit of the agreed upon private testing of five randomly selected Kamini pills seized during the federal investigation of Mr. Patel. The following are the eight points to be drawn from these articles:

1. Article 3 reports that the content of morphine in a Kamini pill falls within the 4 to 21 percentile range. The total morphine in a bottle of Kamini pills is identified as 4,000

mg. By comparison, Articles 7 and 8 (the same letter) disclose that the quantity of morphine in any given Kamini pill will range between 2 and 20 mg. The variation in morphine content reflected in these statements weighs strongly in favor of pursuing the private lab-testing protocol.

2. Articles 1 and 3 state that the Australian Therapeutic Goods Administration has never tested a Kamini pill for quality, safety, or efficacy. This statement underscores the unreliability of the anecdotal evidence forming the basis for the claims set forth in the sources relied upon by the Government.

3. With respect to scientific knowledge regarding Kamini pills, Dr. Thileepan Naren, who is identified in four of the articles relied upon by the government, states in Article 9 that "little is known about use and effects, and more research is needed." This observation aligns with the defense position that these articles hold little value on the subject of private testing of a random sample of the seized Kamini pills.

4. Article 6 recognizes the lower risk of physical harm associated with oral opioid use: "Long term oral opioid use confers relatively lower physical risks than some other habit-forming medicines."

5. Article 6 also reports on information obtained from Auckland, New Zealand, within the time frame 2013 through 2020, regarding 10 Kamini users who developed opioid dependency. The article states that these individuals had a prior history of oral opioid use, and that their dependency was a result of "taking excessively large doses of Kamini," consisting of between 24 and 36 pills per day.

6. Articles 3, 4, 5 and 9 report on instances of opioid dependency in 2022 among 12 Kamini users in Brisbane, Queensland, and another 12 Kamini users in Melbourne, Victoria. Unsurprisingly, these dependencies are attributed to the opium content in the pills. Fairly interpreted, these reports (including Article 6, discussed at paragraph #5) for New Zealand and Australia represent that, over a 10-year period between 2013 and 2022, there were a total of 34 instances of reported opiate dependency linked to Kamini pills in these two countries, meaning there were an average of less than 4 incidents per year.

7. Two of the Articles, numbers 2 and 5, unsurprisingly report that the Kamini pills contain opium, which can be addictive and result in an overdose. Neither statement is controversial. What is not considered is the evidence these pills were abused, which is the actual cause of these adverse outcomes. As stated above, the reported incidents of abuse in these two countries over a 10-year period has been limited to less than an average of 4 per year.

8. Articles 1, 7 and 8 report that "chemical analysis" has detected the presence of mercury, lead and arsenic in Kamini pills. While this may be true, and would pose a danger to the user, this circumstance has no bearing on the morphine content of the Kamini pills that are the subject of the pending prosecution of Mr. Patel.

## III. DISPUTED STATEMENTS IN THE GOVERNMENT'S SENTENCING MEMORANDUM

The following constitute statements within the Government's Sentencing Memorandum that we do not believe are supported by the provided nine Articles:

1. At page 2, it is claimed that "experts note that most patients use it as a 'downer' due to opium content which often leads to dependency." We have not been able to identify this statement within the provided nine Articles, particularly the reference to "most patients," or the identified circumstance "often leads to dependency."

2. On page 3, it is stated that "its [Kamini's] use primarily leads to opioid dependency and heavy metal toxicity." We were not able to identify in any article a statement that the use of Kamini "primarily leads to opioid dependency and heavy metal toxicity." [Emphasis added.]

3. On page 5, referring to Article 3, the Government's submission first restates the title of the article: " 'Indian Viagara' – herbal drug Kamini contains morphine and can quickly lead to dependence." Reference is then made by the Government to the second paragraph of the article, which contains the generalized finding that Kamini, due to the fact it contains opium, leads to chemical dependence in regular users. The Government's Sentencing Memorandum next paraphrases the statement at the bottom of the second page of the Article, asserting the following: "As users build a tolerance, many find themselves increasing their dosage from one tablet per day to 25-30 tablets per day." What is not recognized by the Government is that each of these three

statements is based upon anecdotal reports of a total of 24 individuals in two Australian cities who developed a dependency to Kamini. We take exception to using this decidedly limited sample to claim generally that the use of Kamini "can quickly lead to dependence," that its use "leads to chemical dependence in regular users," and that "many find themselves increasing their dosage from one tablet per day to 25-30 tablets per day." [Emphasis added.] Each claim represents an overgeneralization based solely upon secondhand reports of the experiences of 24 users of Kamini in Australia in calendar year 2022. Even in that narrow context, the accuracy of these statements is open to question.

4. On page 6 of its submission, the Government refers to what is stated in Article 6, which is a limited discussion of the experience of 10 citizens in New Zealand who became addicted to Kamini within the time period 2013 through 2020. The Government, while acknowledging the limited context of its statement, recites the following: "The patient started with a minimal dose which quickly escalated to massive amounts, between 20 and 36 tablets per day." The article does not in fact state that any of the patients "started with a minimal dose," but rather, as the Government recognizes at other points in its brief, the users "consisted primarily of men of Indian descent who had a previous history of opium use in India prior to migrating to New Zealand." Government's Sentencing Memorandum, at 6. The assertion any of these 10 subjects started with a minimal dose of Kamini that quickly escalated is not supported by what is reported in Article 6.

## CONCLUSION

The nine Articles relied upon by the Government, with the exception of the references in Articles 7 and 8 to a variation in morphine content in Kamini pills, are not relevant to the question of whether private lab testing is appropriate. For all of the reasons discussed in recent proceedings on this subject, testing is appropriate. The Court should direct that, without further delay, five pills seized during the investigation of Mohamed Patel be randomly chosen and forwarded for testing at NMS Labs in the Commonwealth of Pennsylvania.

Dated: Buffalo, New York
June 23, 2026

*/s/Rodney O. Personius*
Rodney O. Personius, Esq.
PERSONIUS MELBER LLP
*Attorneys for Defendant*
MOHAMED PATEL
2100 Main Place Tower
350 Main Street
Buffalo, NY 14202
(716) 855-1050
rop@personiusmelber.com