UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v. Case No. 25-cr-173

MOHAMED PATEL,

Defendant.

---

**DEFENDANT'S SUPPLEMENTAL RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM (Doc. No. 45)**

Dated: Buffalo, New York
August 5, 2026

Rodney O. Personius
PERSONIUS MELBER LLP
*Attorneys for Defendant*
*Mohamed Patel*
2100 Main Place Tower
350 Main Street
Buffalo, NY 14202
(716) 855-1050
rop@personiusmelber.com

## PRELIMINARY STATEMENT

Defendant Mohamed Patel, through his attorneys, Personius Melber LLP, Rodney O. Personius, Esq., of counsel, files the following response to the Government's Sentencing Memorandum (Doc. No. 45), specifically addressing Point III, "RELEVANT FACTUAL BACKGROUND/KNOWLEDGE ELEMENT" and Point IV, "THE DEFENDANT'S PROFITS FROM DISTRIBUTING MORPHINE" of that pleading. (Doc. No. 45, at 7-13). We also include a brief update on a matter addressed in our original Sentencing Memorandum (Doc. No. 34) and comment on the private lab pill testing proposal which was aborted due to considerations of cost. We have addressed the initial section of the prosecution's submission arguing that this testing was unnecessary in an earlier pleading filed at Doc. No. 46.

As set forth below, until five days before his arrest, the Defendant's culpable knowledge of the presence of a controlled substance in the pills which are the subject of this action would have been established by conscious avoidance/willful blindness. *See, United States v. Espino*, No. 21-1412, 2022 WL 4112679, at *3 (2d Cir. Sept. 9, 2022). Only upon the arrest of Bashir Kasozi in late August 2024, and Mr. Patel's later review in early September 2024 of a news article based on a USAO press release announcing that Kasozi had been charged with offenses involving morphine, did Mr. Patel learn that these pills in fact contain morphine.

In its Memorandum, the Government asserts that prior events evince the Defendant's actual knowledge of the presence of morphine in the subject pills at an earlier time. Contrary to this assertion, the cited events relied upon by the Government do not support any such inference. The greater weight of the credible, non-speculative evidence confirms he became aware of this fact in early September 2024.

The further claims in the prosecution's submission that Mr. Patel's "profits exceeded the 7-figure range" and the retail cost of the Kamini pills trafficked by him must have well-exceeded the going rate for an ED medication constitute self-serving conjecture. Once more, the record evidence contradicts these arguments.

For the reasons set forth in our two earlier sentencing submissions, buttressed by what is outlined below, the circumstances of this case, considered in the framework of the factors outlined in 18 U.S.C.§3553(a), fully support a sentence of time served.

## I. KNOWLEDGE

### A. Testimony of Female Witness

According to the prosecution, a "female witness" reportedly testified before the grand jury that the Defendant told her the pills contained a "legal percent of opium." (Doc. No. 45, at 8). It is not contested that this witness was paid by the Defendant to have packages of pills sent to her residence and that, at an early stage, she acted as a coordinator regarding shipments to Western New York. However, Mr. Patel denies ever telling her the Kamini pills contained opium principally because, when he dealt with her, he had no idea this was the case. It is telling that, after reporting this claim was made before the Grand Jury, the prosecution's submission offers no details as to the date, location, or context of this alleged admission by the Defendant. Instead, reference is made to the witness asking Mr. Patel about brown pills in a vial and him telling her "the pills were for sexual vitality and performance." *Id.* Nothing about their ingredients including opium.

This witness's credibility is otherwise undermined by the fact that, due to chronic unreliability, her services were discontinued by the Defendant, thereby establishing a motive to falsely inculpate him. She was terminated due to her tardiness in reporting her receipt of packages,

threats to steal these packages, underpayments to the homeowners in Buffalo who accepted delivery of the packages, unreasonable financial demands, and jealous behavior once Mr. Patel began favoring the services of another Buffalo homeowner over her. The other homeowner was also more reliable and less costly than the Government's witness.

The prosecution tellingly identifies no other individuals involved in the receipt and handling of the packages of pills shipped to Buffalo who allegedly had been told the pills contained opium or morphine. There is no other reference in the Government's Sentencing Memorandum to anyone else involved with the Defendant's activities who claimed to know what the pills contained prior to the arrest of Bashir Kasozi, the truck driver who smuggled the Kamini pills over the border. According to the prosecution, "most homeowners remained unaware of the contents of the packages." (Doc. No. 45, at 8).

**B. <u>Text Messages on August 23, 2024</u>**

The Government also relies on a thread of text messages on August 23, 2024 between the Defendant and the other Buffalo homeowner identified above (hereinafter referred to as the "Buffalo homeowner"). This homeowner had assisted Kasozi in loading the boxes of pills into his tractor trailer at a Walden Avenue truck stop prior to Kasozi being arrested as he attempted to leave the United States. (Doc. No. 45, at 8-9). These texts were exchanged within hours after Kasozi was apprehended. The Government makes reference to the Defendant telling the homeowner to delete text chats, not stress, and remain quiet. The Defendant is quoted as stating that he will have to find another driver and will order more packages from India. The Government alleges these messages make "clear the defendant was fully aware of the prohibited nature of the drugs." (Doc. No. 45, at 9.) Contrary to this statement, there is no mention in any of these texts of the nature of the Kamini pills, their ingredients, nor of the fact they contained morphine. While

these conversations may be evidence of Mr. Patel seeking to control the flow of information after Kasozi's arrest, there is nothing in them directly or indirectly establishing his knowledge of the presence of morphine in the pills.

**C. Text Messages and Voice Calls on August 30, 2024**

The Government next refers to a thread of text messages and voice calls on August 30, 2024 between the Defendant and the Buffalo homeowner referred to above. (Doc. No. 45, at 9-10). These messages and calls portray the Defendant attempting to secure a new Buffalo address for the delivery of outstanding packages of pills, which would then be disposed of "through the U.S. side only." It is reported that Mr. Patel stated he would keep a "low profile." The homeowner was told to do the same and delete their conversation. The Government seeks to attach significance to the fact these exchanges came after a press release[1] regarding Kasozi's arrest, which mentioned he was apprehended smuggling pills that contained morphine. Ignoring the evidentiary record, it is asserted that the fact these communications occurred 2 days after the media report "makes clear he (Mr. Patel) was aware of the historical nature of the drugs" (Doc. No. 45, at 10). There is, however, no mention of the press release or news article, nor of the pills containing morphine, in any of these messages or calls. In fact, the Defendant was in South Africa on the date of Kasozi's arrest and did not return to Canada until September 10. As well, the parties agree Mr. Patel never discussed the subject of morphine with the Buffalo homeowner until September 6, 2024, which, as reflected in the footnote, below, is the date he first read the news article about Kasozi's arrest. *See* **EXHIBIT B**, Criminal Complaint, paragraphs 13 and 15.

[1] There is both a press release issued by the USAO and a related news article reporting on the Kasozi arrest. Each mentions the presence of morphine in the Kamini pills seized at that time. As detailed below, the evidence shows Mr. Patel first reviewed the news article on September 6, 2024, which is identified by him in a telephone call on that date as the source of his knowledge of the presence of morphine in the pills. Both the news report and USAO press release are annexed as **EXHIBIT A**.

**D. WhatsApp Messages on September 5, 2024**

The Government also relies on WhatsApp messages exchanged on September 5, 2024 between the Defendant and the Buffalo homeowner regarding 12 additional packages coming to Western New York. Again, contrary to the evidence, the Government flatly contends this message was "well after the defendant was aware Kasozi had been arrested and charged with importing morphine." (Doc. No. 45, at 10.) No weight should be given to this conclusory claim that finds no support in the evidence.

**E. Text Messages and Voice Calls on September 6, 2024**

As set forth by the Government, there were text messages and voice calls between the Buffalo homeowner and the Defendant on September 6, 2024. (Doc. No. 45, at 10-11.) According to the Government, Mr. Patel mentioned the news article about Kasozi's arrest and that it was reported the charges included intent to distribute morphine. This constitutes the first instance in all of his documented contacts with the Buffalo homeowner when the Defendant acknowledged being aware of the presence of morphine in the Kamini pills. September 6, 2024 was five days before Mr. Patel's arrest and after the overwhelming portion of his substantive criminal actions forming the basis for his plea of guilty had been committed.

**F. Second Female Homeowner**

The Government sets forth the Grand Jury testimony of a second female homeowner who testified that sometime "at the end of August or beginning of September 2024," the Defendant contacted her to have packages of pills delivered to her house and her mother's house. (Doc. No. 45, at 11.) This testimony is used to support the meaningless contention this occurred "after it was made public his driver was arrested for importing morphine." *Id.* The key fact is not the date of the media report of the August 23, 2024 arrest of Kasozi disclosing the presence of morphine in

the seized pills, but rather when Mr. Patel became aware of the report, which was not until September 6, 2024. There is no evidence his purported contact with this witness took place on or after that date.

**G. FDA Notice**

As set forth by the Government (Doc. No. 45, at 11), Mr. Patel was allegedly sent a "Notice of FDA Action," dated March 13, 2024, regarding a seizure of Kamini tablets claimed to be linked to the criminal conduct underlying this action. The Government contends this notice informed the Defendant that "these articles are drugs that are not in compliance with the requirements of the law." It is claimed most seizures during the Government's investigation post-dated this notice.

First off, this notice was not sent to Mr. Patel. Instead, it had been sent to a person in Buffalo who was one of the recipients of the packages of pills shipped from JFK Airport. She then forwarded the notice to the Defendant. *See* **EXHIBIT C**. The addressee information on the first page of the document, which is scribbled out, was not associated with Mr. Patel. According to the notice, the Kamini tablets were misbranded in violation of the Food, Drug, and Cosmetic Act. (**EXHIBIT C**, at 1.) The notice further states that "This Notice does not in any manner accuse you of violating any law." (**EXHIBIT C**, at 2, underlining added for emphasis.) It also outlines the steps that could be taken to claim the tablets. There is no reference in the document to morphine, nor any other controlled substance. Whatever value this notice may have as evidence of the Defendant's conscious avoidance of the nature of the pills at issue, it is not by any stretch proof of Mr. Patel's knowledge of the presence of morphine in those pills as of March 2024.

**H. Possible Trafficking Charges**

The Government references a text between the Defendant and an unidentified individual on November 23, 2023, and characterizes it as "listing the possible charges [the Defendant] could

face for trafficking Kamini pills[.]" (Doc. No. 45, at 12.) The actual thread of text messages is attached hereto as **EXHIBIT D**. While the apparent list of charges is prefaced by the Defendant's text: "I am going to send you charges here[,]" (**EXHIBIT D**, at 1, 11/23/2023 10:51:09), there is no indication of the reason this list was sent to a recipient identified as "Abho." A set of what appear to be potential charges are then outlined by Mr. Patel in a text at 11:16:43 (*Id.* at 1-2). Included is a reference to "Schedule 7 drug import export Kamini." The prosecution offers no explanation as to its purpose in referring to this November 23, 2023 text thread.

Research discloses there are only five drug schedules in the United States. While Canadian law in the past included a Schedule VII for cannabis, that schedule was repealed in 2018. The purpose or meaning of the "Schedule 7" reference in this text is opaque. More to the point, there is no connection of any kind that can fairly be drawn between this listing of charges and any knowledge on the part of Mr. Patel at the time he prepared it as to the presence of morphine in Kamini pills.

## I. RCMP and FDA Alerts

The Government contends Mr. Patel received alerts on his cell phone from the RCMP and FDA, which reported that the Kamini pills contained morphine. (Doc. No. 45, at 12.) The messages referred to by the Government were in actuality screen shots of text messages sent to the Defendant by Nasir Shaikh. He accessed these messages on September 10, 2024, after returning from South Africa. This was the day before he was arrested. As part of its investigation, the Government conducted a Cellebrite extraction of the Defendant's seized cell phone. Attached as **EXHIBIT E** is an excerpt from the Government's Cellebrite extraction report of WhatsApp communications between the Defendant and Nasir Shaikh contained in the Defendant's phone. At pages 4 to 9 of **EXHIBIT E** are WhatsApp messages found on Mr. Patel's cell phone, dated September 10, 2024.

The actual screen shots linked to these messages are attached as **EXHIBIT F** in the order received by Mr. Patel.

The Government correctly represents that the screen shots state Kamini pills contain morphine; however, these screen shots were not received by the Defendant until the day before he was arrested.[2] By that point, based upon reviewing the news article on September 6, 2024 reporting on Kasozi's arrest, Mr. Patel already knew of the presence of morphine in the pills. As well, by that point, Mr. Patel's substantive criminal conduct had essentially ended.

**J. Kamini Packaging Disclosures**

The Government refers to the warnings on the bottles containing the Kamini pills as putting the Defendant on notice as to the opium content of the pills. (Doc. No. 45, at 12.) Attached hereto as **EXHIBIT G** are photographs of a Kamini bottle label and package insert. The label lists the ingredients of the pills. The ingredient at issue in this action is Papaver somniferum, a Latin phrase, which, per Wikipedia[3], is described as follows:

> Papaver somniferum, commonly known as the opium poppy or breadseed poppy, is a species of flowering plant in the family Papaveraceae. It is the species of plant from which both opium and poppy seeds are derived and is also a valuable ornamental plant grown in gardens.

Per Google Translate[4], a translation of the first three lines in Hindi on the package insert is as follows:

> Properties - It is an excellent astringent medicine. It is beneficial for strengthening the sensory organs while invigorating the reproductive system and seminal vessels.

2. The Government states that it was the Defendant who replied "wrong number" to one of the text messages. (Doc. No. 45, at 12.) In fact, that reply had been forwarded by Nasir Shaikh to whomever had originally forwarded the text messages to him.

3. https://en.wikipedia.org/wiki/Papaver_somniferum

4. https://translate.google.com

> This medicine is a potent aphrodisiac. It alleviates laxity of the genitals and enhances sexual potency.[5] [Underlining added for emphasis.]

Accordingly, nothing on the bottle label nor package insert for the Kamini pills would have put Mohamed Patel on notice that the pills contained morphine, or any other controlled substance. The package insert, on the other hand, does support the Defendant's understanding that the pills were sold to address ED.

### K. February 21, 2025 Interview

As the Court is aware, Mohamed Patel submitted to an interview with Government personnel on February 21, 2025. One of the covered topics concerned his knowledge of the presence of morphine in the Kamini pills forming the basis for his prosecution. The Defendant stated that he did not become aware of the morphine ingredient in these pills until reading the news article of the arrest of his truck driver, Kasozi, on September 6, 2024. He also acknowledged that he did avoid learning of all the ingredients in a Kamini pill as he suspected the pills might contain a prohibited or regulated ingredient, but his first knowledge of the presence of morphine did not occur until September 6, 2024. This explanation on his part was accepted without reservation by the personnel present at the interview. It was not questioned.

## II. PROFIT

At page 13 of the Government's Sentencing Memorandum, section IV addresses the alleged profit earned by Mohamed Patel from his illegal activities. Notwithstanding the complete absence of evidence that the Defendant knew the Kamini pills distributed by him contained morphine until five days before his arrest, the Government nonetheless chooses to caption this section "THE DEFENDANT'S PROFITS FROM DISTRIBUTING MORPHINE." A fairer

5. The entirety of the Hindi information on the package insert and the translation into English by Google Translate is attached hereto as **EXHIBIT H**.

characterization of his activities based on the evidence analyzed above would refer to Mr. Patel's distribution of Kamini pills.

Applying a loose method of extrapolation, it is claimed that the Defendant's profits exceeded "the 7-figure range." (Doc. No. 45, at 13.) Based upon this conjecture, the argument is then made that, to make the extrapolated profit, Mr. Patel "would have to sell the product at a high enough margin to offset these costs[,]" referring to monies paid to acquire the pills, cover their shipment to the United States and their express delivery from JFK Airport to Western New York, the charges paid to homeowners in the Buffalo area who accepted delivery of the packages of pills, and the costs of the truck driver (Kasozi) who smuggled the boxes of pills into Canada.

Referring back to the interview of Mr. Patel on February 21, 2025, he reported at that time that his entire profit during the period of his participation in the activity charged in the Information would have been approximately $1,000,000, not any figure in excess of that sum. He also stated that the cost for a bottle of 40 pills retail ranged between $90 and $100, and that the cost for a single pill was generally $5. No one at the interview questioned these responses.

With respect to the profit figure identified by the Defendant at this interview, the fruits of his unlawful conduct were principally consumed by the purchase of a home for his family, which since has been lost, the purchase of an expensive vehicle, which since has been surrendered, and expenditures associated with his addiction to gambling, all of which ultimately ended in losses. In terms of the cost of the Kamini pills to the consumer, paying $100 for a bottle of 40 pills amounts to only $4 per pill. Even a single pill only costs $5. None of the prosecution's "Profit" argument adds any support to its misguided attempt to establish that Mohamed Patel had knowledge of the presence of morphine in the Kamini pills trafficked by him prior to September 6, 2024, only five days before his arrest.

## III. UPDATE TO DEFENDANT PATEL'S SENTENCING MEMORANDUM

The defense sentencing submission was originally filed on April 20, 2026 (Doc. No. 34). **EXHIBIT E** to that submission is a summary of educational pursuits on the part of Mr. Patel while he has been incarcerated at the Allegany County Jail. Annexed to this submission as **EXHIBIT I** is an updated Official Transcript from the jail showing that he has now completed 111 courses (as compared to 96 previously) and earned 391 credit hours (as compared to 313 hours previously). His commitment to self-improvement is unwavering and has continued over the past four months.

## Conclusion

The greater weight of the credible evidence demonstrates that Mr. Patel's actual knowledge of the presence of morphine in the Kamini pills he trafficked was not acquired until his review of the Kasozi arrest news article on September 6, 2024, five days before he was arrested. The argument of the Government regarding Mr. Patel's alleged profits from his unlawful activities constitutes unsupported conjecture. At a cost of $100 for 40 pills, a Canadian consumer would never have found that per-pill expense to be remotely exorbitant as a cure for erectile dysfunction. At that price, these pills never would have been mistaken as a substitute for fentanyl, nor is there reliable evidence that this in fact has ever been the case. During his additional period of incarceration, Mr. Patel has continued to demonstrate his commitment to rehabilitating himself.

In our original April 20, 2026 submission, we requested that the Court consider a sentence of time served as sufficient, but not greater than necessary, to meet the goals of federal sentencing set forth in 18 U.S.C. §3553(a). As of the time of that submission, the Defendant had served more than 19 months in local custody. By comparison, as of his new sentencing date, he will have

served more than 23 months in custody. All of this time served has been in an environment where he earns no First Step Act credits, consisting of 10 days of time credits for each 30 days of participation in approved programming activities.

Given the opportunity to advocate for a harsher sentence, the prosecution has chosen to rely upon news reports of limited evidentiary value, principally based upon anecdotal evidence, to argue that the Kamini pills trafficked and smuggled by Mr. Patel were, in reality, a substitute for fentanyl. The Government's arguments and cited sources fall far short of in any reliable way of substantiating that allegation.

In addition, the defense was prepared to submit a limited sampling of the seized pills for testing to determine its actual morphine content, an alternative that was ardently opposed by the prosecution. That this avenue was not pursued was by no means at the fault of the Defendant or his family, but was rather due to a combination of the per-pill testing cost and the number of pills that would have had to have been analyzed in order to generate a reliable outcome. We raise this point not to in any way question the need for a reliable testing protocol, but rather to underscore the fact satisfying this requirement became financially prohibitive.

We understand requesting a time served sentence of almost 2 years in consideration of a calculated low end guidelines sentence of 7 years and 3 months constitutes a substantial variance. We have, however, made a strong showing that a by-the-letter application of the *Guidelines* in this case would be grossly unfair due to the likely low percentage of morphine in each pill juxtaposed against the mandate under the Drug Conversion and Drug Quantity Tables that the gross weight of each pill determine the guideline sentencing range. This must not be allowed to happen under our facts. The degree of mitigation in this case is ubiquitous.

Mr. Patel has a demonstrated lifetime of good works. He is known for his devotion to his son and daughter, and for his generosity with his time. His family, including his wife, has suffered severely in his absence. His demonstration of remorse and acceptance is beyond question. The role played by Mr. Patel's addiction to gambling as the overarching incentive for his criminal conduct – that, as opposed to greed or avarice – is itself significant mitigation. The Defendant's confinement in a local jail for almost 2 years, using every opportunity to better himself, without any First Step Act benefit, is alone worthy of a sizeable reduction in his jail term. All of these considerations notwithstanding, foremost perhaps is the demonstration by the greater weight of the evidence that Mohamed Patel understood throughout that he was peddling an ED remedy. Not once did he pause to think he would ever be viewed or perceived as a monster dealing in morphine intended for addicts. The facts simply do not show this to have been the case.

Respectfully submitted,

Dated: Buffalo, New York
August 5, 2026

*/s/Rodney O. Personius*
Rodney O. Personius
PERSONIUS MELBER LLP
*Attorneys for Defendant*
*Mohamed Patel*
2100 Main Place Tower
350 Main Street
Buffalo, NY 14202
(716) 855-1050
rop@personiusmelber.com